UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Davia Lotoya Smith, | ) | Civil Action No.: 4:22-cv-02082-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I. RELEVANT BACKGROUND**

**A.    Procedural History**

Plaintiff filed an application for SSI on January 23, 2020. (Tr. 10). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in September 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 1, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-22). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in June 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this Court in June

2022. (ECF No. 1). There was a prior ALJ decision on record, which the current ALJ gave significant weight to and found persuasive. (Tr. 10). The prior unappealed decision date was January 28, 2019, for SSI. (Tr. 72).

**B.     Plaintiff's Background**

Plaintiff was born in February 1981, and was thirty-eight years old on the date the application was filed. (Tr. 20). Plaintiff had at least a high school education and no past relevant work experience. (Tr. 20). Plaintiff alleges disability originally due to subventricular tachycardia, right knee pain, depression, fibromyalgia(FM), high blood pressure, diabetes, asthma, anxiety, migraines, osteoarthritis, and restless leg syndrome. (Tr. 99). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of November 1, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 10-22):

1.  The claimant has not engaged in substantial gainful activity since January 23, 2020, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: fibromyalgia, depression, anxiety, asthma, migraines, a history of a total right knee replacement second to degenerative joint disease, osteoarthritis of the left knee, diabetes mellitus, and obesity (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can stand and walk four hours in an eight-hour day; sit for six hours in an eight-hour day; occasional climbing

of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing and stooping; no kneeling, crouching, or crawling; avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, dangerous machinery, and heights; is further limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related instructions and decisions and relatively few workplace changes; is further limited to occupations requiring no more than occasional interaction with coworkers and members of the general public; and she will be able to maintain concentration, persistence, and pace for two-hour increments.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on February 7, 1981 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since January 23, 2020, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in analyzing fibromyalgia (FM). (ECF No. 11 at 28). Plaintiff argues the ALJ failed to properly analyze the effects of obesity on the RFC in accordance with SSR 19-2p. (ECF No. 11 at 26-27). Plaintiff argues the ALJ erred in determining the RFC, specifically Plaintiff is unable to perform the stand/walk due to pain in multiple areas of her body, cane use, sustain work on a regular and continuing basis, and mental limitations. Plaintiff argues the ALJ

failed to reconcile/explain the lack of mental limitations in the RFC that were contained in opinions found persuasive by the ALJ. (ECF No. 11 at 29). Plaintiff reiterates all her RFC arguments in the argument regarding Step Five that the RFC limitations supported were not asked of the VE. (ECF No. 11 at 30).

The Commissioner argues generally that the ALJ's RFC is supported by substantial evidence; the Commissioner does not address SSR 12-2p or SSR 19-2p. (ECF No. 13 at 6-9). The Commissioner's brief relies generally on "normal findings."(ECF No. 13 at 6-9).

A.    **LEGAL FRAMEWORK**

1.    **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included

4

in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

5

that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial

evidence to support the decision of the Commissioner, that decision must be affirmed "even should

the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court

looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to

support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## B.    ANALYSIS

**Obesity**

Plaintiff argues the ALJ failed to properly analyze the effects of obesity on the RFC in

accordance with SSR 19-2p.[3] (ECF No. 11 at 26-27). Plaintiff argues Plaintiff's other impairments,

like FM, history of total right knee replacement second to degenerative joint disease, and

osteoarthritis of the left knee are affected in combination by Plaintiff's obesity. (ECF No. 11 at 26-

27).

The ALJ found Plaintiff's obesity as severe. (Tr. 13). In the Listing discussion, the ALJ laid

out law generally about obesity and a conclusion about obesity:

> In addition, the undersigned has evaluated obesity pursuant to the detailed guidelines
> set forth in SSR 19-2p. Obesity is not a listed impairment; however, the functional
> limitations caused by the medically determinable impairment of obesity, alone or in
> combination with other impairments, may medically equal a listing. For example,
> obesity may increase the severity of a coexisting or related impairment to the extent
> that the combination of impairments medically equals a listing. General assumptions
> about the severity or functional effects of obesity combined with another impairment
> will not be made. Obesity in combination with other impairments may or may not
> increase the severity or functional limitations of the other impairments. Obesity is

---

[3] "Social Security Rulings, or "SSRs ," are interpretations by the Social Security
Administration of the Social Security Act. They do not carry the force of law but are binding on
all components of the Social Security Administration, as well as on ALJs when they are
adjudicating Social Security cases." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir.
2021)(internal citations and quotations omitted).

often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders. **Each case will be evaluated based on the information in the case record. Accordingly, the undersigned has fully considered obesity in the context of the case record in making this decision, and obesity does not equal a listing alone or in combination with other impairments**.

(Tr. 14)(emphasis added).

Plaintiff specifically argues the ALJ failed to address the following functional limitations, as related to obesity, the ability to sustain function over time, the ability to walk/stand on a sustained basis with severe pain in lower extremities, specifically knees, and the affect of fatigue on Plaintiff's ability to sustain work activity. (ECF No. 11 at 26). In the RFC narrative, the ALJ only stated Plaintiff has been diagnosed with obesity and treatment notes showed a BMI of at least 35.[4] (Tr. 17).

The Commissioner's brief's argument section does not mention obesity at all; thus, the Commissioner's specific position on the instant ALJ's RFC analysis as to obesity is unclear. (ECF No. 13).

Obesity can clearly affect functional limitations. SSR 19-2p. Obesity may increase the severity of functional limitations of other found impairments. SSR 19-2p, *2. Obesity is required to be considered in assessing an RFC. SSR 19-2p at *4, citing 20 CFR § 416.945. Obesity does increase stress on weight-bearing joints, which can contribute to functional limitations in range of motion, may affect manipulation of objects, and may affect the ability to tolerate certain environments. SSR 19-2 at *4. Obesity may affect the "ability to sustain function over time." SSR 19-2p at *4. By way of example, someone with a combination of obesity and arthritis may have more pain and functional limitations than someone with just arthritis alone. SSR 19-2p at *4.

---

[4] "In the medical community, obesity is defined as a BMI of 30.0 or higher. No specific weight or BMI establishes obesity as a severe impairment within the disability program." SSR 19-2p.

Against the backdrop of SSR 19-2p, this issue is frequently addressed in the lower courts of the Fourth Circuit Court of Appeals with varying outcomes. Many decisions affirming disability denials are based on records that have a lack of supporting opinions and/or based on plaintiffs' briefs that do not identify resulting functional limitations if obesity had been considered with other impairments—Plaintiff here identifies specific functional limitations in ability to sustain function over time, ability to stand/walk on a sustained basis with severe pain in lower extremities, and affect of fatigue on ability to sustain work activity, which distinguishes the instant action as requiring remand instead. (ECF No. 11 at 26); *see Smith v. Saul*, 2020 WL 3442327, at *6 (E.D.N.C. May 13, 2020), *report and recommendation adopted*, 2020 WL 3442318 (E.D.N.C. June 23, 2020)(remanding where no mention of obesity in any of the five steps); *Cassandra W., v. Kijakazi.*, 2022 WL 279828, at *6–7 (D. Md. Jan. 31, 2022)(remand where ALJ found obesity as severe but did not discuss obesity in the RFC, where plaintiff had pointed to limitations attributable to obesity, such as pain that limited capacity to walk/stand throughout workday); *Sherri D. v. Kijakazi*, 2022 WL 1714850, at *3 (D. Md. Mar. 16, 2022)(affirming because plaintiff did not allege additional limitations as to obesity and did not suggest obesity would further limit standing/walking); *Crank v. Saul*, 2021 WL 955913, at *13 (S.D.W. Va. Feb. 25, 2021), *report and recommendation adopted*, 2021 WL 951751 (S.D.W. Va. Mar. 12, 2021)(affirming where no physician opined about any limitations related to obesity and plaintiff did not assert how obesity impacted abilities); *Risner v. Comm'r Soc. Sec., Admin.*, No. 8:19-CV0-0753-BHH-JDA, 2020 WL 6276536, at *12 (D.S.C. Apr. 20, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5525391 (D.S.C. Sept. 15, 2020)(affirming where plaintiff did not direct this court to a theory of how obesity limited functional capacity); *Mohamed Kair G. v. Saul*, 2020 WL 3412997, at *5 (D. Md. June 22, 2020)(affirming,

finding plaintiff had not suggested obesity would further limit his standing or walking or other functions); *Brownlee v. Saul*,  2019 WL 3858652, at *6 (M.D.N.C. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4723257 (M.D.N.C. Sept. 26, 2019)(affirming where plaintiff did not refer to any limitation related to obesity); *Dunston v. Berryhill*, 2018 WL 4576783, at *7 (E.D.N.C. June 5, 2018), *report and recommendation adopted*,  2018 WL 4204639 (E.D.N.C. Sept. 4, 2018)(affirming, finding plaintiff had not identified how obesity impacted function).

    While acknowledging that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result," here the ALJ did not provide any RFC explanation as to obesity, where SSR 19-2p requires analysis and where Plaintiff here has identified at least some record evidence for consideration of a possible impact on functional limitations. *See Morris v. Comm'r*., No. 9:19-cv-1378-JMC-BM, 2020 WL 6218710, at *14 (D.S.C. May 21, 2020), *report and recommendation adopted sub nom*., 2020 WL 5269796 (D.S.C. Sept. 3, 2020)(*quoting  Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). The ALJ did not explain obesity's impact on the RFC. SSR 19-2p is clear that the ALJ "must consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, *4. There are some notes in the record regarding weight loss as a treatment for osteoarthritis of left knee. (Tr. 1179, 767). Plaintiff was to continue weight loss as medically tolerated for pain in right knee in March 2019. (Tr. 557). In August 2020, it was noted that weight loss efforts had been unsuccessful. (Tr. 770). Plaintiff here has identified a possible effect on the RFC as to stand/walk and sustaining workweek. Considering all these concerns and the record in this particular case, the court cannot make its own findings in the first place about whether obesity in combination would have affected functional abilities in the RFC finding.

Issues raised by Plaintiff regarding obesity and possible effects on the RFC should be addressed on remand by the ALJ.[5]  The court recognizes that changes upon remand to the analysis may result in changes to the opinion analysis and/or the RFC, which would further affect Steps Four and Five.

**Fibromyalgia (FM)**

Plaintiff argues the ALJ erred in analyzing FM. (ECF No. 11 at 28). Defendant's arguments do not address SSR 12-2p or *Arakas v. Commissioner*, 983 F.3d 83 (4th Cir. 2020), which are both highly relevant to FM concerns in social security cases.

Fibromyalgia(FM) is assessed using a two-step framework. 20 C.F.R. § 416.929; SSR 12-2p. First, the ALJ must assess the objective medical evidence and determine whether plaintiff has a medically determinable impairment(MDI). 20 C.F.R. § 416.929(b); SSR 16-3p. A MDI of FM is found based on having all three of: 1) a history of widespread pain for at least three months, which may fluctuate in intensity and may not always be present; 2) at least 11 positive tender points on physical exam both bilaterally and above and below the waist OR repeated manifestations of six or more FM symptoms, like fatigue, cognitive/memory problems, waking unrefreshed, depression, anxiety, or IBS; and 3) evidence that other disorders that could cause the symptoms were excluded. SSR 12-2p, 2012 WL 3104869, *2-3.  Second, if the ALJ finds a MDI, the ALJ assesses plaintiff's symptoms to determine how the symptoms' intensity and persistence affect plaintiff's ability to work. 20 C.F.R. § 416.929(c); SSR 16-3p. At the second step, the plaintiff is not generally required to produce objective evidence of the pain itself or its intensity. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit recently held this evidentiary rule is particularly forceful in cases

---

[5] Plaintiff's arguments regarding the RFC as to stand/walk limitations should be considered on remand.

where plaintiffs are impaired by fibromyalgia—"a disease whose symptoms are entirely subjective,

with the exception of trigger-point evidence." *Arakas v. Comm'r,* 983 F.3d 83, 96-97 (4th Cir. 2020).

Because "[o]bjective indicators such as normal clinical and laboratory results simply have no

relevance to the severity, persistence, or limiting effects of ... fibromyalgia," the Fourth Circuit held

that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of

multiple factors—to discount a claimant's subjective complaints regarding symptoms of

fibromyalgia." *Id.*

> The ALJ here found FM as a severe impairment. (Tr. 13). At the listing level, the ALJ stated:

> Furthermore, although fibromyalgia cannot meet a listing in appendix 1 because it
> is not a listed impairment, fibromyalgia could medically equal a listing (for example,
> listing 14.09D in the listing for inflammatory arthritis), or medically equal a listing
> in combination with at least one other medically determinable impairment (SSR
> 12-2p). Nevertheless, there is no evidence that fibromyalgia medically equals a
> listing, either individually or in combination with another impairment.

(Tr. 14). The ALJ noted Plaintiff's testimony that medication for FM did not help. (Tr. 17). The ALJ

expressly focused on objective findings to address Plaintiff's subjective symptoms: "the objective

findings in this case fail to provide strong support for the claimant's allegations of disabling

symptoms and limitations. More specifically, the medical findings do not support the existence of

limitations greater than the above listed residual functional capacity." (Tr. 17). The extent of the

ALJ's FM discussion as to the RFC was:

> As for the claimant's fibromyalgia, treatment notes throughout 2020 and 2021
> indicated that the claimant had 10 to 12 fibromyalgia tender points during her
> examinations (Ex. **B5F/6; B12F/6; B21F/17, 43; B23F/10, 14; B25F/3**). Further, it
> was noted that the claimant received physical therapy for her fibromyalgia pain from
> January through March 2021 (Ex. **B19F; B21F**). Finally, however, treatment notes
> from February and April 2021 also indicated that the claimant's fibromyalgia was
> controlled with medication (Ex. **B21F/18; B23F/6**).

(Tr. 17-18)(emphasis added). The ALJ indicated Plaintiff had the relevant objective finding as to FM, i.e. tender points. (Tr. 17);  SSR 12-2p, 2012 WL 3104869, *2-3. The other reliance was only that Plaintiff did PT for 3 months in 2021 and two months of notes in February 2021 and April 2021 that FM was controlled with medication. (Tr. 18).  In concluding the impairments discussion generally, the ALJ focused on all the objective findings as to range of motion, gait, motor function/strength, sensations, and reflexes. (Tr. 18-19). In concluding the entire RFC narrative, the ALJ again stated:

> the undersigned concludes the medical records do not support the claimant's self-imposed limitations. Despite the evidence demonstrating that the claimant suffered from medically determinable "severe" impairments, the evidence also establishes the claimant retained the capacity to function adequately to perform many basic activities associated with work. The above residual functional capacity assessment is supported by the <u>objective medical evidence</u> contained in the record. Physical and mental <u>examinations</u> in the record do not sustain the claimant's allegations of disabling limitations. Further, the <u>objective medical testing</u> does not support the allegations of disabling limitations.

 (Tr. 20)(emphasis added). The ALJ's rejection of Plaintiff's FM alleged limitations based on objective evidence is further compounded because unlike the claimant in *Arakas*, the exhibits cited by the ALJ actually included unconsidered abnormals.[6] *Arakas* was decided in December 2020, and

---

[6] For example, the ALJ cited Exhibit B5F/6 which is a February 2020 visit with APRN Felder where there were multiple abnormals on exam unnoted by the ALJ. (Tr. 539-540). The ALJ cited B12F/6, which is a June 2020 visit with Dr. Patel, where there were multiple abnormals on exam unnoted by the ALJ. (Tr. 636-637). Plaintiff was prescribed multiple medications for FM affecting multiple sites and it was noted Plaintiff still had some pain on medications. (Tr. 637). The ALJ cited B25F/3 which is a June 2021 visit with Dr. Patel where Plaintiff had positive cervical spine tenderness, positive edema, positive paraspinal muscle spasms, positive pain with motion/palpation of shoulders, shoulder tenderness, decreased abduction, positive wrist tenderness, positive hip tenderness, and 12 FM tender points. (Tr. 1151). The ALJ only noted the tender points in finding the exams did not support Plaintiff's allegations and did not note the other multiple abnormal exam findings, in turn finding Plaintiff was not more limited than the RFC found.

was applicable at the time of the ALJ's decision in November 2021. Reviewing all of the specific page citations cited by the ALJ in support of this finding, it is evident that the ALJ focused specifically on some parts of objective exams, ignoring abnormals except tender point counts. Further, the ALJ's RFC narrative explanation, specifically as to FM, is scant, only noting tender points generally, PT, and that two notes stated controlled with medication. (Tr. 17-18). Later, "as for all of these impairments," the ALJ addressed the normals without noting the abnormals, focusing on strength, gait, sensation, and range of motion. (Tr. 18-19). The ALJ relied on the "lack" of objective findings in formulating the RFC.  (Tr. 18-20). Defendant's brief also focuses on objective findings and reviewing the record, the following Defendant's statement is not entirely accurate: "The evidence reflecting overall normal findings with treatment is substantial evidence." (ECF No. 13 at 8).

The ALJ here performed a type of analysis that *Arakas* precludes as to FM. The error does not necessarily mean that Plaintiff is disabled, but that the application of an inappropriate legal standard undermines the stated bases for the ALJ's findings set forth in the decision, and requires remand for a proper evaluation of the case record. *See also Sandra P., v. Comm'r*, 2022 WL 815463, at *8 (E.D. Va. Mar. 1, 2022) (collecting cases), *recommendation adopted sub nom.* 2022 WL 811295 (E.D. Va. Mar. 16, 2022); *Bryson v. Berryhill*, 2021 WL 2517682, at *5 (W.D.N.C. June 18, 2021) (collecting cases)(recognizing the "significant rule change in *Arakas*" and remanding "in line with post-*Arakas* decisions of other districts in the Fourth Circuit");*David R. v. Kijakazi*, 2021 WL 3144528, at *4 (D. Md. July 26, 2021)("*Arakas* prohibits a specific use of evidence that, with respect to fibromyalgia, runs counter to the present understanding of that disease. Thus, after *Arakas,* the use of objective medical evidence to discount the disease's limiting effects is improper in the Fourth Circuit."). While the

14

Commissioner may be able to articulate on remand different explanations for discounting any claimed RFC limitations due to FM, such explanations must be provided by the Commissioner in the first instance in accordance with the principles set forth in *Arakas*. On remand, the Commissioner should provide sufficient explanations that would permit meaningful judicial review.

## Opinions

Plaintiff argues the ALJ failed to explain the lack of mental limitations in the RFC which were contained in opinions that were found persuasive. (ECF No. 11 at 29). The ALJ found the opinions of Dr. Wieland and Waller persuasive because the opinions were supported with explanations and generally consistent with treatment notes of record. (Tr. 19-20). Those opinions were Plaintiff was moderately limited in ability to: understand/remember detailed instructions, maintain attention/concentration for extended periods, complete a normal workday/workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public, supervisors, and coworkers. (Tr. 116). Specifically, Plaintiff "may miss an occasional day due to her mental condition," "may be better-suited for a job that did not require regular work with the general public," and "can make simple work-related decisions." (Tr. 119). After finding Plaintiff's allegations partially consistent and Plaintiff's condition as severe, Dr. Wieland, Ph.D. found "the level of severity would not preclude the performance of simpler tasks, in a work setting with <u>minimal work with the general public</u>." (Tr. 109).  The RFC had a limit of <u>occasional</u> interaction with coworkers and members of the general public. (Tr. 16). Occasional is "very little up to one-third," a little more than/around 2 hours per workday. SSR 83-10.  Plaintiff argues the ALJ did not provide for the limitations opined that were found persuasive. There is no RFC explanation by the ALJ about how the RFC finding of

15

occasional interaction was found where the ALJ found the evidence of record was consistent with and supported the opinion of minimal work with the public. It is unclear without explanation whether two hours of interaction with the general public is consistent with "minimal work with the general public." The court does not make such findings in the first instance. This issue further supports remand.

### III. CONCLUSION

Error by the fact finder as to FM and as to obesity in performing the subjective symptom evaluation and in determining Plaintiff's RFC requires remand, which also may affect the RFC as to, including but not limited to, stand/walk abilities and sustaining the work week. Plaintiff's briefed issue as to opinions on mental impairments in relation to the RFC also is supportive of remand. Proper development of the record as set out above may have a significant impact on the Commissioner's determination of subjective symptom evaluation, the RFC, and, thus, on the availability of work for Plaintiff in the national economy at Step Five. In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

s/Thomas E. Rogers, III

May 1, 2023                                                         Thomas E. Rogers, III
Florence, South Carolina                                  United States Magistrate Judge

16